STEVEN M. SPECTOR (SBN: 51623)
  Email: sspector@buchalter.com
ANTHONY J. NAPOLITANO (SBN 227691)
  Email: anapolitano@buchalter.com
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>FAWN RIDGE PARTNERS, LP,<br><br>          Debtor. | Case No. 2:09-bk-15088-TD<br><br>Chapter 11<br><br>**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF BAC HOME LOANS SERVICING, LP**<br><br>[Declaration of Richard L. Darling concurrently filed herewith]<br><br>Date: August 19, 2009<br>Time: 10:00 a.m.<br>Place: Courtroom 1345<br>       255 East Temple Street<br>       Los Angeles, CA 90012 |

Fawn Ridge Partners, LP, debtor and debtor in possession in the above-captioned bankruptcy case ("Debtor"), respectfully submits this Opposition to the Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (the "Motion") of BAC Home Loans Servicing, LP, loan servicer for Bank of America, N.A., successor in interest to Countrywide Home Loans ("BofA-Countrywide"), as follows:

## I.

## INTRODUCTION

It is premature to grant relief from the automatic stay at this stage of the bankruptcy case. Debtor has nearly completed drafting its Disclosure Statement and Plan of Reorganization (the "Plan") and expects to file the same before the hearing on BofA-Countrywide's Motion.

> *A court should not precipitously sound the death knell for a debtor by prematurely determining that the debtor's prospects for economic revival are poor. At this time the Court has no basis on which to conclude the debtor cannot be rehabilitated.*

*In re Shockley Forest Industries, Inc.*, 5 B.R. 160, 162 (Bankr. N.D. Ga. 1980) (emphasis added).

Debtor's Plan offers BofA-Countrywide better treatment by virtue of the adequate protection payments being offered than it would receive if it was permitted to foreclose on the collateral, retake possession of a high-end luxury home for which there is an extremely depressed market, market the same, ultimately sell it and potentially have to finance a portion of sales price. Debtor's Plan contemplates modifying the outstanding loan balance with respect to the Rainfield Property (as defined below) to fair market value with Debtor's principals as primary obligors for such payments.

Debtor has submitted this proposal to BofA-Countrywide on July 31, 2009. Debtor has been advised that it may take up to three months for BofA-Countrywide to respond to Debtor's proposal. In the meantime, Debtor has, and does hereby offer, offered to make adequate protection payments to BofA-Countrywide in the amount of $5,500.00 (plus payments of insurance, maintenance expenses and HOA dues). This would be equivalent to the interest that a market rate loan would earn on the Rainfield Property and is substantially more than the fair market rental value for the Rainfield Property.

Ultimately, BofA-Countrywide is faced with two choices. It could foreclose on the Rainfield Property and have the house sit vacant for a significant period of time (if not years) without receiving a single payment (and having to expend money to cover insurance, taxes, maintenance and homeowner's dues. Alternatively, BofA-Countrywide can support Debtor's Plan and receive immediate adequate protection payments and, ultimately, plan payments at or better than the current market rate of return for the home. Debtor's forthcoming Plan and offers of adequate protection are sufficient reasons to deny BofA-Countrywide's premature Motion at this time.

## II.

## STATEMENT OF FACTS

A.   OVERVIEW OF DEBTOR'S BUSINESS AND REAL ESTATE INVESTMENT PROPERTIES.

Debtor is a limited partnership engaged in the business of real estate investment and development. Debtor's principal, Richard Darling, has been a successful residential real estate developer for over thirty years. As a result of the recent decline in the Southern California real estate market, Debtor owns interests in various properties of which it is attempting to negotiate various loan workouts. Declaration of Richard L. Darling (the "Darling Decl."), ¶ 3.

Debtor owns real property located at 2857 Rainfield Avenue, Thousand Oaks, California (the "Rainfield Property"). Debtor also owns a 50% interest in Roosevelt Heights Development, LLC ("Roosevelt Heights LLC"), which, in turn, owns two parcels of real property located in the County of Riverside: 20 acres of undeveloped land located at 17217 Roosevelt Street, Riverside, CA 92508 (the "Roosevelt Property"); and 10 acres of undeveloped land located at the Northwest corner of Markham & Roosevelt, Riverside CA 92508 (the "Markham Property", and together with the Rainfield Property and the Roosevelt Property, the "Properties")[1]. Darling Decl., ¶ 4.

The Rainfield Property is a single family residence consisting of approximately 4,000 sq. ft. of living space on an approximately 16,500 sq. ft. lot. Debtor's principals acquired the Rainfield Property on or about June 12, 2000.[2] Development of the Rainfield Property is

---

[1] Only the Rainfield Property is the subject of Countrywide's Motion.
[2] In February, 2009, the Darling Family Trust conveyed its interest in the Rainfield Property to Debtor pursuant to an Equity Sharing Agreement, whereby Debtor had the right to require Debtor's principals to make a capital

complete. Darling Decl., ¶ 5. The Rainfield Property is encumbered by a first priority deed of trust securing an obligation in the principal amount of $1,760,000 originated by Countrywide Home Finance and now due and payable to BofA-Countrywide (as defined above). The Rainfield Property is also encumbered by a second priority deed of trust securing a home equity line of credit obligation in the principal amount of $220,000, which was originated by Countrywide Home Finance and is now due and payable to BofA-Countrywide (as defined above). Darling Decl., ¶ 6.

In February, 2009, the Rainfield Property was appraised for approximately $1,550,000. Debtor has requested an updated appraisal and will provide such update to the Court prior to the hearing. The appraiser has provided an updated appraisal to reflect an appraised value as of August 4, 2009. The updated appraisal provides that the value of the Rainfield Property is approximately $1,350,000 to $1,450,000, with $1,400,000 appearing to best reflect the current market and consistent with comparable sales for the neighborhood. Darling Decl., ¶ 7; a true and correct copy of the August 4, 2009 appraisal is attached to the Darling Decl. as Exhibit 1.

The Roosevelt Property consists of twenty acres of undeveloped land and a 2,900 sq. ft. single family residence. The Roosevelt Property is encumbered by a first priority deed of trust in favor of Allstar Growth Fund, LLC ("Allstar Growth") in the total amount of approximately $1.85 million.[3] The Markham Property consists of 10 acres of unimproved land. The Markham Property is encumbered by a first priority deed of trust in favor of Jim Martin in the total amount of approximately $600,000. Darling Decl., ¶ 8.

Debtor, Roosevelt Heights and their affiliates intended to subdivided and develop the Roosevelt Property and the Markham Property. But as a result of the current state of the local real estate markets and the national financial crisis, Debtor was unable to obtain the necessary funding to restructure existing indebtedness of the Properties. Thus, Debtor was compelled to commence the above-captioned bankruptcy case in order to restructure the debt and position the

---

contribution to Debtor. Debtor's principals transferred the Rainfield Property in connection with that capital contribution demand.

[3] Recently, negotiations with Allstar Growth to restructure the debt on the Roosevelt Property had broken down, and Allstar Growth had foreclosed on the Roosevelt Property.

Main Document    Page 5 of 11

Properties for further development or sale. Darling Decl., ¶ 9.

On March 5, 2009, Debtor commenced the above-captioned Chapter 11 bankruptcy case. Debtor is continuing in the operation and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Debtor and the other investor in Roosevelt Heights are making progress with the secured lender for the Markham Property to reduce the amount of that indebtedness. Restructuring the Markham Property may free up additional equity that Debtor could contribute to the restructuring of the BofA-Countrywide debt on the Rainfield Property. Darling Decl., ¶ 10.

B.  THE RAINFIELD PROPERTY RESTRUCTURING PROPOSAL

On July 31, 2009, Debtor's principal submitted a loan modification proposal to BofA-Countrywide to restructure the obligations secured by the Rainfield Property in connection with this bankruptcy case. Darling Decl., ¶ 11. A true and correct copy of the Loan Modification Proposal is attached to the Darling Declaration as Exhibit 2. The Loan Modification Proposal, which is a key component of Debtor's proposed Plan, contemplates the following:

- Reduction of the principal balance of the first and second priority notes secured by the Rainfield Property, including all delinquent payments of principal, interest and late charges, to the Rainfield Property's fair market value (*i.e.*, $1,400,000);

- Modification of the interest rate on the modified note to 5% per annum on the reduced principal balance; and

- The terms of the modified loan obligation would be a 30-year fixed rate fully amortizing loan.

Debtor anticipates that this loan modification proposal will result in a monthly payment of approximately $7,700. Darling Decl., ¶ 12; Exhibit 2.

While Debtor, its principals, and BofA-Countrywide negotiate the specifics of the foregoing loan modification and Plan, Debtor, through its principals, proposes to make "adequate protection" payments to BofA-Countrywide in lieu of seeking relief from the automatic stay. The adequate protection proposal contemplates the following.

- Debtor and its principals will pay BofA-Countrywide $5,500 per month as adequate protection over the next three months starting immediately pending confirmation of the Plan and the loan modification for the Rainfield Property.

A PROFESSIONAL CORPORATION
LOS ANGELES

BN 4109439v2                                    5

DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY

- Additionally, Debtor and its principals will continue to pay all operating expenses, insurance, maintenance and homeowner's fees of the home, as Debtor's principals have been doing for the past eight months.

Darling Decl., ¶ 13; Exhibit 2.

## III.

## ARGUMENT

In the face of today's depressed real estate market, particularly for high-end homes in the San Fernando Valley, BofA-Countrywide is presented with an extraordinary opportunity. It can choose to have a performing market loan and adequate protection payments starting immediately, or it can face holding a non-performing asset for an extended period of time as the local real estate market continues its downward spiral. It's a simple choice; Debtor's proposed loan modification and adequate protection proposals provide the greatest economic recovery for BofA-Countrywide.

### A. DEBTOR DID NOT COMMENCE THIS BANKRUPTCY CASE IN BAD FAITH

BofA-Countrywide seeks relief from stay on the grounds that Debtor commenced this bankruptcy case in bad faith. Notably missing from BofA-Countrywide's Opposition is any evidence that would support a finding of bad faith. Bankruptcy courts use several approaches to determine whether bankruptcy petitions are filed in bad faith. One approach is to contemplate a laundry list of factors tending to suggest bad faith, which may include:

1) The debtor has few or no unsecured creditors;
2) There has been a previous bankruptcy petition by the debtor or a related entity;
3) The pre-petition conduct of the debtor has been improper;
4) The petition effectively allows the debtor to evade court orders;
5) There are few debts to non-moving creditors;
6) The petition was filed on the eve of foreclosure;
7) The foreclosed property is the sole or major asset of the debtor;
8) The debtor has no ongoing business or employees;
9) There is no possibility of reorganization;
10) The debtor's income is insufficient to operate;
11) There was no pressure from non-moving creditor;
12) Reorganization essentially involves the resolution of a two-party dispute;
13) A corporate debtor was formed and received title to its major assets immediately before the petition, and;

14)    The debtor filed solely to create the automatic stay.

*In the Matter of Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986).

The application of these factors to the case at bar leads to the conclusion that the Debtor did not file its bankruptcy petition in bad faith. Debtor has over $100,000 in unsecured debt as set forth in Schedule F to its bankruptcy petition. Debtor has never filed bankruptcy before the instant case, and was not formed immediately prior to the petition date. Debtor was formed on June 1, 2005 (nearly four years prior to the petition date). Darling Decl., ¶ 14. There are no allegations that Debtor's pre-petition actions were improper or done to evade court orders or solely for the benefit of the automatic stay. In fact, there had been no Notice of Default or Notice of Foreclosure Sale filed with respect to the Rainfield Property when Debtor commenced this bankruptcy case. Darling Decl., ¶ 15.

The Rainfield Property is not the sole or major asset of Debtor. When Debtor commenced this bankruptcy case, it also held interests in 10 acre and 20 acre parcels of land in Riverside County, California. Darling Decl., ¶ 16. Moreover, Debtor believes that it has a reasonable Plan of reorganization capable of being confirmed that will provide BofA-Countrywide with a better financial outcome than pursuing relief from stay and foreclosing on the Rainfield Property. Darling Decl., ¶ 17. For the foregoing reasons, it is clear that Debtor did not commence this bankruptcy case in bad faith, which would justify granting relief from the automatic stay.

B.    THE RAINFIELD PROPERTY IS NECESSARY FOR AN EFFECTIVE REORGANIZATION.

BofA-Countrywide seeks relief from stay on the grounds that Debtor has no equity in the Rainfield Property and that such property is not necessary for an effective reorganization.[4] To support its argument, BofA-Countrywide relies on *In re Cogar*, 210 B.R. 803 (B.A.P. 9th Cir. 1997) for the proposition that Debtor cannot modify BofA-Countrywide's claim, and, therefore, the Rainfield Property cannot be part of an effective reorganization.

*Cogar* is factually distinguishable and inapposite. In that case, the senior secured lender first priority holder of a deed of trust in a building, and the debtor was a junior lienholder on the same building, which was owned by a third party. *Id.* at 805-06. Subsequently, the debtor junior

---

[4] Based on the recent appraisal, it appears that there is no equity in the Rainfield Property.

lienholder declared bankruptcy, and the property was not listed as an asset of the estate. The senior secured lender filed a state court action seeking foreclosure of the property. *Id.* at 806-07. Subsequently, the trustee submitted a reorganization plan that provided that the note held by senior secured lender was to be restructured and be without recourse. *Id.* at 807-808. The plan also provided that the owners of the building would transfer the property to trustee, who would then resell it to the owners. *Id.* The plan was approved, and the senior secured lender sought appellate review. *Id.* at 808.

The Bankruptcy Appellate Panel reversed, stating that under Section 541(a) of the Bankruptcy Code, at the time a debtor files bankruptcy, all of the debtor's property became property of the estate. *Id.* at 809. "First Federal [the senior secured lender] did not hold a claim against the bankruptcy estate which was subject to treatment in the Chapter 11 plan. The real property was not property of the estate, as opposed to the estate's lien interest in the property." *Cogar*, 210 B.R. at 812. The fact that debtor did not own the property precluded a claim by the senior secured lender against the estate. *Id.* Thus, the trustee lacked standing to restructure appellant's note. *Id.* Here, the Rainfield Property is property of the bankruptcy estate, and Debtor can restructure BofA-Countrywide's interest in the property.

The United States Supreme Court in *Johnson v. Home State Park*, 501 U.S. 78, 115 L. Ed. 2d 66, 111 S. Ct. 2150 (1991), provides support for this proposition. In *Johnson*, the Supreme Court held that a mortgage lien for which a debtor has no personal liability is a "claim" within the meaning of the Bankruptcy Code, subject to inclusion in a Chapter 13 plan of reorganization. 510 U.S. at 82-83. The Court noted that the mortgage is a separate and distinct claim from the underlying payment obligation that it secures. Therefore, a plan or reorganization can properly restructure a mortgage interest in the debtor's property where the debtor had no obligation on the underlying note. *Id.* at 83-86.

The court in *In re Foxcroft Square Co.*, 184 B.R. 671 (E.D. Pa. 1995), extended this proposition to Chapter 11 bankruptcy cases. In that case, the court rejected the secured lender's contention that "permit[ting] a restructuring of the lien on the Property would be inconsistent with the Bankruptcy Code's policy that obligations can only be restructured in a bankruptcy of the

obligor." *Id.* at 676-77. The *Foxcroft Square* court based its decision on the Supreme Court's rationale in *Johnson* "that a mortgage holder's right to proceeds from the sale of a debtor's property constitutes a 'right to payment' and that the right to foreclose upon a mortgage constitutes a 'right to an equitable remedy,' [therefore] a mortgage lien fits within the definition of 'claim' under § 101(5)." *Id.* at 676 (citing *Johnson*, 501 U.S. at 85). The *Foxcroft Square* court also noted that "[t]he Debtors may not have been the original obligors with respect to the loan at bar, however, as noted above, [the secured lender] has a "claim" on property owned by the Debtors under the Supreme Court's broad interpretation [in *Johnson*] of the general provisions of the Bankruptcy Code." *Id.*

BofA-Countrywide's assertion that the Rainfield Property is not necessary for an effective reorganization because its interests cannot be restructured is without merit. *Johnson* and *Foxcroft Square* support Debtor's position that it can restructure BofA-Countrywide's interests in its Plan. Moreover, Debtor has presented a Plan to BofA-Countrywide that provides a better result then the alternative of foreclosing on the Rainfield Property and having it sit vacant for months or years. Debtor's principals are committed to funding the loan modification, which will provide BofA-Countrywide with a much better return. The Rainfield Property is necessary for an effective reorganization, and accordingly, BofA-Countrywide's Motion must be denied.

C.   "CAUSE" DOES NOT EXIST TO JUSTIFY GRANTING RELIEF FROM STAY.

BofA-Countrywide seeks relief from stay on the grounds that Debtor sufficient cause exists pursuant to section 362(d)(1) to grant such relief. Section 362(d)(1) of the Bankruptcy Code provides that relief from the automatic stay can be granted upon a showing of "cause." 11 U.S.C. § 362(d)(1). Use of the word "cause" suggests an intention that the bases for relief from the stay should be broader than merely lack of adequate protection. "Because there is no clear definition of what constitutes 'cause', discretionary relief from the stay must be determined on a case by case basis." *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985); *see also In re Tucson Estates, Inc.* 912 F.2d 1162, 1166 (9th Cir. 1990) ("Cause has no clear definition and is determined on a case-by-case basis . . . ."); *In re Castlerock*, 781 F.2d 159, 163 (9th Cir. 1986) ("[C]ause is determined on a case-by-case basis.").

In this case, "cause" does not exist to justify granting BofA-Countrywide's Motion relief from the automatic stay to foreclose on the Rainfield Property. As set forth above, Debtor and its principals have proposed a Plan of Reorganization and loan modification plan that will provide BofA-Countrywide with better economic recover than they would achieve if relief from stay is granted. Furthermore, Debtor and its principals have offered BofA-Countrywide adequate protection payments during the interim period while the parties negotiate and finalize Debtor's contemplated Plan. For these reasons, "cause" does not exist, and BofA-Countrywide's Motion should be denied.

## IV.

## CONCLUSION

Debtor respectfully requests that the Court deny BofA-Countrywide's Motion for Relief from the Automatic Stay, and grant such other relief as is just and proper.

Dated: August 5, 2009            Respectfully Submitted,

BUCHALTER NEMER, a professional corporation

By:   /s/ Steven M. Spector.
      STEVEN M. SPECTOR

Attorneys for Debtor and Debtor in Possession

| In re: FAWN RIDGE PARTNERS, LP | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:09-bk-15088-TD |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate a NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017.

The foregoing document described as **DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF BAC HOME LOANS SERVICING, LP** will be served or was served in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Steven M. Spector - sspector@buchalter.com, IFS_efiling@buchalter.com
Anthony J. Napolitano – anapolitano@buchalter.com, IFS_efiling@buchalter.com
Cassandra J Richey on behalf of Interested Party Courtesy NEF - cmartin@pprlaw.net
United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On August 5, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail and/or with an overnight mail service addressed as follows:

Debtor
Fawn Ridge Partners, LP
9606 Santa Monica Blvd., Third Floor
Beverly Hills, CA 90210

Honorable Thomas B. Donovan
United States Bankruptcy Court -
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1352
Los Angeles, CA 90012

☐ Service information continued on attached page

**III. SERVED BY FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to Fed. R. Civ. Proc. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies), who consented in writing to such service method, by facsimile transmission and/or email as follows:

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 8/5/09 | Sandra I. Alarcon | /S/ Sandra I. Alarcon |
|---|---|---|
| Date | Type Name | Signature |

BN 2880820v1