**FILED**
MAR 29 2010
SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

RECEIVED
MAR 31 2010
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

In re:                          )   BAP No. CC-09-1396-HPDu
                                )
FAWN RIDGE PARTNERS, LP,        )   Bk. No. 09-15088-TD
                                )
            Debtor.             )
_____)
                                )
FAWN RIDGE PARTNERS, LP,        )
                                )
            Appellant,          )
                                )
v.                              )   M E M O R A N D U M[1]
                                )
BAC HOME LOANS SERVICING, LP,   )
                                )
            Appellee.           )
_____)

Submitted on March 18, 2010
at Pasadena, California

Filed - March 29, 2010

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Thomas B. Donovan, Bankruptcy Judge, Presiding.

_____

Before: HOLLOWELL, DUNN and PERRIS[2], Bankruptcy Judges

The debtor in this case challenged the right of BAC Home Loans Servicing, LP (BAC) to seek relief from stay to foreclose

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] Hon. Elizabeth L. Perris, Chief Bankruptcy Judge for the United States Bankruptcy Court for the District of Oregon, sitting by designation.

on the debtor's real property secured by deeds of trust naming Countrywide Home Loans, Inc. (Countrywide) as beneficiary. The bankruptcy court determined that the debtor waived any challenge to BAC's standing to seek relief from the automatic stay and, because it found cause existed under § 362(d)(1) and (d)(2), granted BAC relief from stay. The debtor appeals the bankruptcy court's determination that BAC had standing to bring the stay relief motion. We REVERSE because BAC did not establish its standing to seek stay relief.

## I.    FACTS

Fawn Ridge Partners, LP (the Debtor) is in the business of real estate investment and development. The Debtor filed a chapter 11 bankruptcy petition on March 5, 2009, and continued its business as the debtor in possession. According to the Debtor's disclosure statement, the Debtor's general partner is Fawn Ridge, LLC, and its sole limited partner is the Darling Family Trust.[3] The Debtor's principal is Richard L. Darling (Darling), the managing member of Fawn Ridge, LLC and co-trustee of the Darling Family Trust.

In June 2000, Darling and his wife acquired real property, a single family residence in Thousand Oaks, California (the Rainfield Property). The Darlings transferred the Rainfield Property to the Darling Family Trust in 2007, and in February 2009, the Darling Family Trust conveyed the Rainfield Property to

---

[3] The Debtor's Disclosure Statement and Chapter 11 Plan were not included in the record on appeal. However, we may take judicial notice of the underlying bankruptcy records. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

the Debtor.[4]

The Debtor's bankruptcy schedules show the Rainfield Property is fully encumbered. The Rainfield Property is valued at $1,550,000. Countrywide is listed on the Debtor's Schedule D as a creditor holding an adjustable rate promissory note secured by a deed of trust[5] on the Rainfield Property in the amount of $1,760,000 (the Note and Deed of Trust), and as a creditor on a home equity line of credit for $220,000, secured by a second deed of trust on the Rainfield Property.

On July 23, 2009, BAC filed a notice and motion for relief from the automatic stay (the Stay Relief Motion) as to the Rainfield Property under the Note and Deed of Trust.[6] BAC identified itself as "BAC Home Loans Servicing, L.P., fka Countrywide Home Loans Servicing, L.P., fka Countrywide Home Loans, Inc." Included in the Stay Relief Motion was a form declaration[7] by a bankruptcy specialist at BAC stating that she

---

[4] The Debtor's Disclosure Statement states that the conveyance occurred in February 2009; however, its Reply Brief on appeal asserts the transfer was made in December 2009, under an equity sharing agreement. BAC alleges that the transfer occurred on the eve of bankruptcy, which it asserts was evidence of a bad faith filing, if not a fraudulent transfer.

[5] Mortgage Electronic Registration Systems, Inc. ("MERS") is named as Countrywide's nominee and beneficiary.

[6] Although BAC listed both the Note and Deed of Trust, as well as the equity loan and second deed of trust, in its Stay Relief Motion, only the Note and Deed of Trust were attached to the Stay Relief Motion. The parties' discussion about modification of the loan seems to reference only the Note.

[7] Under the Local Bankruptcy Rules for the Central District of California, a movant must use local form 4001-1M.R.P. for its

(continued...)

was a custodian of BAC's records and files. A box on the declaration form used in the Central District of California for stay relief motions was marked indicating that BAC "holds a deed of trust." The exhibits attached to the declaration to evidence this contention were only the Note and Deed of Trust in the name of Countrywide (the note for the equity loan and second deed of trust were not included). No documentation regarding an indorsement, assignment, transfer, sale of the Note and Deed of Trust, or servicing agreement, was included with the Stay Relief Motion.

In its Stay Relief Motion, BAC listed the Deed of Trust as securing a claim in the amount of $1,846,749.[8] BAC alleged that cause existed under § 362(d) to lift the stay because there was no equity in the Rainfield Property and it was not necessary for an effective reorganization. Furthermore, BAC alleged that the Debtor filed its bankruptcy case in bad faith on the basis that the Debtor was not the original obligor on the Note.

On August 5, 2009, the Debtor filed an Opposition to the Stay Relief Motion. The Debtor argued the Rainfield Property was necessary for an effective reorganization. It contended there was no cause for stay relief because its proposal to modify the loan securing the Rainfield Property to fair market value, along

---

[7](...continued) relief from stay motion. Local Rule 1002-1(d)(9) ("Motions for relief from stay shall be made using those forms designated for mandatory use in the F 4001-1 series of the court-approved forms.").

[8] This amount included $47,666 in prepetition arrearages and $39,083 in postpetition arrearages.

with the payment of adequate protection payments to BAC, would offer BAC better treatment than if BAC foreclosed its security interest.

On August 18, 2009, the Debtor and BAC entered into a Stipulation for Interim Adequate Protection (the Adequate Protection Agreement) to allow the parties time to negotiate modifications on the Note. The bankruptcy court entered an order approving the Adequate Protection Agreement the same day. Under the terms of that agreement, the parties agreed to continue the hearing on the Stay Relief Motion, meanwhile the Debtor would make adequate protection payments to BAC in the amount of $5,500 per month for September, October, and November 2009.

The Debtor's loan modification proposal was to reduce the amount of the Note by more than $400,000 and to lower the interest rate from 6.5% to 5%. BAC rejected the Debtor's proposed loan modification on September 25, 2009, and later objected to the same treatment as stated in the Debtor's Disclosure Statement and chapter 11 Plan.[9]

On November 4, 2009, the Debtor filed a Supplemental Opposition to the Stay Relief Motion. The Supplemental Opposition challenged BAC's right to seek stay relief because (1) BAC had failed to join the owner of the Note; and (2) BAC had "failed to demonstrate that it [was] the holder of the [N]ote, the owner of the [N]ote, or any party with standing to enforce the [N]ote." The Debtor again argued that no cause existed for

---

[9] BAC contends that the hearing on the Stay Relief Motion was also a hearing on its objection to the Debtor's Disclosure Statement. However, the order on appeal specifies that it only determines the stay relief issues.

stay relief because the Rainfield Property was necessary to an effective reorganization and loan modifications would benefit BAC, providing it with "greater economic recovery than if BAC foreclosed."

BAC responded on November 12, 2009, requesting that the bankruptcy court take judicial notice that "Bank of America Corporation purchased Countrywide Financial Corporation" in order to find that BAC had standing to bring the Stay Relief Motion. BAC also relied on correspondence by the Darlings to Bank of America on October 30, 2009, as evidence of its standing, contending that the correspondence constituted an admission by the Debtor that BAC was entitled to enforce the Note. Furthermore, BAC argued that the Darlings' transfer of the Rainfield Property to the Debtor was a fraudulent transfer and that the Debtor, through the transfer, was attempting in bad faith to circumvent § 1123(b)(5), which disallows modification of an obligation secured by an individual debtor's principal residence. BAC produced no additional documentation to evidence its interest in the Note and Deed of Trust.

On November 18, 2009, the bankruptcy court held a hearing on the Stay Relief Motion. At the hearing, the bankruptcy court addressed the Debtor's objection to BAC's standing by taking judicial notice that:

> Bank of America owns Countrywide and that all the activity that I have seen with respect to Countrywide since that time . . . has been absorbed by Bank of America. Bank of America has chosen to operate under a number of subsidiaries in a variety of ways but it's one company . . . it's all Bank of America.

Hr'g Tr. 6:1-6.

On December 7, 2009, the bankruptcy court subsequently entered a Supplemental Memorandum regarding BAC's Stay Relief Motion. In its Supplemental Memorandum, the bankruptcy court found that the Debtor's challenge to BAC's standing was not "timely or valid" and was suggestive of bad faith. It entered an order on December 7, 2009, granting BAC relief under § 362(d)(1) and (d)(2). The Debtor timely appealed.[10]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(1) and (b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in determining that BAC had standing to seek relief from the automatic stay?

## IV. STANDARDS OF REVIEW

A bankruptcy court's decision to grant relief from the automatic stay is generally reviewed for an abuse of discretion. Delaney-Morin v. Day (In re Delaney-Morin), 304 B.R. 365, 368 (9th Cir. BAP 2003). However, we review de novo whether a party has a sufficient stake in a controversy to establish standing. Pershing Park Villas Homeowners Assoc. v. Unified Pac. Ins. Co., 219 F.3d 895, 900 (9th Cir. 2000). De novo review requires that we consider a matter anew, as if no decision had been previously

---

[10] The Debtor filed with the Bankruptcy Appellate Panel an emergency motion for a stay pending appeal on December 17, 2009. Consideration of the motion was deferred to this Panel because the parties agreed that no foreclosure would take place prior to April 8, 2009. This memorandum decision disposes of that motion.

7

rendered. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988).

## V. DISCUSSION

Relief from stay hearings are limited in scope to determining the adequacy of protection, equity, and the necessity of property to an effective reorganization. 11 U.S.C. § 362(d). The validity of the underlying claim is not litigated. In re Emrich, 2009 WL 3816174 *1 (Bankr. N.D. Cal. 2009) (citations omitted). As limited as the issues are in a stay relief proceeding, the party seeking stay relief must establish standing and be a party in interest. 11 U.S.C. § 362(d); In re Wilhelm, 407 B.R. 392, 398 (Bankr. D. Idaho 2009). The Debtor argues BAC had no standing to seek relief from the automatic stay because BAC produced no evidence establishing it held any interest in the Note and Deed of Trust securing the Rainfield Property, and had no entitlement to enforce the obligation.

A. Standing

The issue of standing involves both "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975). Constitutional standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to have a "case or controversy" to which the federal judicial power may extend under the Constitution's Article III. Id. at 498-99; Pershing Park Villas, 219 F.3d at 899; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).

Additionally, the prudential doctrine of standing "is comprised of both judicially-created limitations, such as the prohibition on third-party standing . . . and statutorily-imposed limitations, such as the [Fed. Rule Civ. P.] Rule 17(a) requirement" that suits be maintained by the real party in interest. Gilmartin v. City of Tucson, 2006 WL 5917165 *4 (D. Ariz. 2006), citing Lee v. Deloitte & Touche LLP, 428 F.Supp.2d 825, 831 (N.D. Ill. 2006).

**B.  Constitutional Standing**

The "irreducible constitutional minimum of standing" requires a showing that the plaintiff has suffered an actual, concrete and particularized injury in fact, caused by the defendant's conduct, which a favorable judgment will likely redress. Lujan v. Defenders of Wildlife, 504 U.S. at 560.

BAC argues that its standing was confirmed by the terms of the order approving the Adequate Protection Agreement, and is now the law of the case.[11] Under the law of the case doctrine, an issue of law once decided should govern the same issues in subsequent stages of the same litigation. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988); In re Ellett, 300 B.R. 768, 772 (Bankr. E.D. Cal. 2003). The

---

[11] See, e.g., Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 861 (9th Cir. 2008). In that case, Wachovia was the holder of a deed of trust on the debtor's property. Its loan servicer, Washington Mutual, sought relief from stay to foreclose on the property. The order granted relief as to enforcement of the deed of trust and to the property. Finding that the order was a final order binding as to the res or property, the Ninth Circuit held that the debtor could not later collaterally attack the bankruptcy court's jurisdiction on the basis that Washington Mutual lacked standing to seek relief from the automatic stay.

9

doctrine does not apply here. First, the bankruptcy court did not, through the order approving the Adequate Protection Agreement, finally decide an issue of law with respect to BAC's standing. See Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined.").

More importantly, the order approving the Adequate Protection Agreement was entered after the Stay Relief Motion was filed. Constitutional standing is a "threshold jurisdictional requirement, and cannot be waived." Pershing Park Villas, 219 F.3d at 899-900; Warth v. Seldin, 422 U.S. at 498-99; In re Jacobson, 402 B.R. 359, 366-67 (Bankr. W.D. Wash. 2009). Thus, BAC cannot rely on the order approving the Adequate Protection Agreement to provide it with standing.

BAC contends it has standing because it submitted a declaration with its Stay Relief Motion indicating that BAC "holds a deed of trust" securing the Rainfield Property. However, BAC is not the payee on the Note securing the Deed of Trust nor a beneficiary under the Deed of Trust.

Mere possession of the Note does not make BAC a "holder" of the Note. Under California law,[12] to qualify as a holder, one must be in possession of the instrument, and the instrument must be properly endorsed. Cal. Comm. Code ("CComC") § 1201(21); In re Hwang, 396 B.R. at 762. Although the payee of an instrument may negotiate it, the payee must indorse it as well as

---

[12] In the absence of bankruptcy law providing for the enforcement of a promissory note, state law governs. See In re Hwang, 396 B.R. 757, 762 (Bankr. C.D. Cal. 2008).

deliver it to another person, who then can become its holder. CComC § 3201, 1201(21)(A). There is no evidence in the record that Countrywide indorsed the Note and transferred it to BAC (or to Bank of America). Thus, mere possession of the Note and Deed of Trust does not provide BAC with standing.

Furthermore, while BAC's title indicates it is a loan servicer, this by itself is insufficient to establish BAC's standing. A loan servicer may have constitutional standing because it has a right to payment pursuant to its duties as a servicer on a loan. See, e.g., In re Conde-Dedonato, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008) (collecting cases). The loan servicer's interest in the note is "by virtue of its servicing activities for which it receives compensation." In re Viencek, 273 B.R. 354, 357-58 (Bankr. N.D.N.Y. 2002). Thus, a loan servicer may be injured by a debtor when it loses its servicing fees as a result of the debtor's nonpayment on the loan. But, in this case, BAC did not provide evidence, such as an affidavit or other documentation, establishing the terms of its agreement to service the loan for Countrywide or Bank of America.

Thus, BAC failed to present the evidence necessary to demonstrate that it was either the holder of the Note, the transferee or assignee of the Note, or the servicer of the Note. The bankruptcy court's taking of judicial notice that Bank of America Corporation purchased Countrywide Financial Corporation does not cure BAC's standing issues because BAC offered no evidence to establish the nature of its relationship to Bank of America or Countrywide. Therefore, BAC did not demonstrate that

11

it had been injured by the Debtor's default on the loan. As a result, it did not have constitutional standing to file the Stay Relief Motion.

C.  **Prudential Standing**

Prudential standing requires the plaintiff to assert its own claims rather than the claims of another. Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir. 2004); In re Hwang, 396 B.R. at 766. Unlike constitutional standing, prudential standing does not derive from the Constitution and may be waived by a defendant if not properly or timely raised. Pershing Park Villas, 219 F.3d at 899; Lee v. Deloitte & Touche LLP, 428 F.Supp.2d at 831 (Rule 17 objection waived when not raised timely).

The bankruptcy court determined that the Debtor's challenge to BAC as the real party in interest was waived. However, we need not reach the prudential standing issues raised by the Debtor in this appeal since BAC failed to demonstrate it had constitutional standing to seek relief from the automatic stay.

### VI. CONCLUSION

For the foregoing reasons, we REVERSE the bankruptcy court's order granting stay relief to BAC. BAC is free to file a new motion for relief from stay if it can properly demonstrate its standing.[13]

---

[13] On March 8, 2010, the Debtor filed a motion requesting this Panel to take judicial notice of corporate documentation regarding Countrywide and Bank of America. The Panel issued an order on March 11, 2010, deferring ruling on the motion until after oral argument. We decline to take judicial notice of the Debtor's documentation and deny the motion.

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

## NOTICE OF ENTRY OF JUDGMENT

BAP No.:     CC-09-1396-HPDu

RE:     FAWN RIDGE PARTNERS, LP

A separate Judgment was entered in this case on **03/29/2010**.

## BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken. 9th Cir. BAP Rule 8014-1

## ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

## APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $455 filing fee and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

## CERTIFICATE OF MAILING

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

**By:** Vincent Barbato, Deputy Clerk

**Date:** March 29, 2010